UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Scott Matthew Tovey

        Petitioner,

   vs.                REPORT AND RECOMMENDATION

Warden M. Cruz, Federal
Prison Camp-Duluth,

        Respondent.     Civ. No. 09-508 (PAM/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I.  Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus under Title 28 U.S.C. §2241.  The Petitioner appears pro se, and the Respondent appears by Ana H. Voss, Assistant United States Attorney.

For reasons which follow, we recommend that the Petition for a Writ of Habeas Corpus be denied, and that the Petitioner's Motion for Judgment on the Pleadings be denied.

## II. Factual Background

The Petitioner is currently incarcerated at the Federal Prison Camp, in Duluth, Minnesota ("FPC-Duluth"), following a conviction for Failure to Account For and Pay Over Employment Taxes, in violation of Title 26 U.S.C. §7202. See, Declaration of Ann C. Kinyon, ("Kinyon Decl."), Docket No. 6, at ¶2 and Attachment A. The Petitioner was sentenced on May 7, 2008, to twenty-four (24) months imprisonment, followed by three (3) years of supervised released, by the United States District Court for the District of Minnesota. Id. at Attachment A. The Federal Bureau of Prisons (the "BOP") projects that the Petitioner will be released on April 2, 2010, with the application of good conduct time release. Id. at ¶2.

By way of background, the Petitioner's incarceration commenced on July 7, 2008. See, Kinyon Decl., supra at Attachment A. Prior to his incarceration in July of 2008, since May 26, 2006, the Petitioner worked as a journeyman tile setter for Blackhawk Tile & Stone, Inc. ("Blackhawk"). See, Supplement to Petition for Writ of Habeas Corpus, ("Supplement to Petition"), Docket No. 4, at p. 3, and Petitioner's Reply to Government's Response ("Petitioner's Reply"), Docket No. 10, at Attachment Q. On July 23, 2008, Steve Harrison ("Harrison"), the President of

- 2 -

Blackhawk, wrote a letter stating that Blackhawk "gladly extends a position to Scott Tovey of equal pay upon his availability to return to work." Petitioner's Reply, supra.

The Petitioner avers that he furnished a copy of Harrison's letter to the Government, in relation to another matter, but that he never provided a copy of that letter to BOP staff. Id. at p. 7. Since that promise of employment, the economy has entered a recession resulting in higher rates of unemployment. Id. at Attachment R. The Petitioner advises that, since the downturn in the economy, he has had conversations with his former employer, in which it was indicated "that there was no work and that it wasn't looking good." Id. at p. 7. The Petitioner does not reveal when he had those conversations with his former employer.

On July 30, 2008, the Petitioner attended his first meeting with his Unit Team, which is comprised of Mr. Havron ("Havron"), his Case Manager, and Ms. Coleman ("Coleman"), his Unit Manager. See, Petition for Writ of Habeas Corpus, ("Petition"), Docket No. 1, at p. 2. The Unit Team presented a list of recommended courses to the Petitioner, including Rational Behavior Therapy, Weight Loss and Nutrition, and Personal Finance. Id. at p.2 and Attachment 1. The Unit Team set goals for the Petitioner, some of which were to be completed by his next Unit Team meeting, and others to be accomplished prior to his Residential Reentry Center

("RRC")[1] transfer date.  Id. at Attachment 9.  Those goals included completing recommended course work, maintaining clear conduct, receiving above average work evaluations, saving $10.00 per month for release, and preparing an employment folder.  Id. at Attachment 9.

During his first Unit Team meeting, the Petitioner's Unit Team also advised the Petitioner that he would be reviewed for placement in an RRC approximately seventeen to nineteen (17-19) months prior to his scheduled release, and that they would discuss RRC placement at their next meeting.  Id. at p. 2 and Attachment 9. The Petitioner asked Havron what he should expect for his RRC placement.  Id. at p. 2.  According to the Petitioner, Havron stated the Petitioner should expect to receive an RRC placement in the sixty to ninety (60-90) day range.  Id.  The Petitioner then asked if there was anything that he could do to maximize his RRC placement.  Id.  The Petitioner avers that Havron then stated that there was nothing that the Petitioner could do, since RRCs are for people who need them, and the Petitioner had a family and a home to which to return.  Id.

---

[1]Residential Reentry Centers are also referred to as halfway houses or community confinement facilities.  For clarity's sake, we simply refer to these facilities as RRCs throughout our analysis.

Thereafter, the Petitioner's second Unit Team meeting was scheduled for January 21, 2009. Id. On January 11, 2009, in view of his upcoming Team Meeting, the Petitioner submitted an Inmate Request to Staff, in which he informed his Unit Team that his wife had recently filed for divorce. Id. at p. 2 and Attachments 2-3. Based upon that change in his circumstances, the Petitioner requested a twelve (12) month RRC placement, since he would now be reentering society, following his incarceration, without money, a vehicle, or housing. Id. at p. 2.

On January 21, 2009, at his Unit Team meeting, the Petitioner was notified that his Unit Team would be recommending a 60 to 90 day placement in an RRC. Id. at p. 2. According to the Petitioner, he then asked Havron if he was aware that his wife had filed for divorce and, as a result, that he would have no home, money, or vehicle, upon his release from prison. Id. at p. 2. Havron responded that, notwithstanding his recent divorce, his parents were still alive, and $1,000.00 had been sent into the prison on his behalf, so the Petitioner had strong family, and financial support.[2] Id. at p. 2.

---

[2]We note that there are inconsistencies in the Petitioner's papers, as to the amount of money that was sent on his behalf. For instance, at one point he recognizes that his soon-to-be ex-wife sent $1,000.00. See, Petition, supra at p. 2. However, elsewhere the Petitioner states that he received $10,000.00 from his parents, in addition to $400.00 from a friend, which was borrowed against the sale of his Wedding ring. See, Petitioner's Reply, supra at pp. 7-8. We assume that the Petitioner erred, and meant
(continued...)

In response, the Petitioner informed Havron that the money was sent by his soon-to-be ex-wife, so it was not an indication of the financial resources he wold have at his disposal upon his release from prison. Id. Havron then stated that "they could only go by the past." Id. at pp. 2-3. The Petitioner then asked what the purpose of the Second Chance Act was, and Havron stated that "[t]he Second Chance Act is for extraordinary circumstances only * * * [and] I've been doing this [for 22 years, and] * * * I know what an extraordinary circumstance is." Id. at p. 3.

In its submissions in this case, the Respondent avers that BOP staff, in making their determination with respect to the Petitioner's RRC placement, conducted an individual assessment of the Petitioner's circumstances, in accordance with the requisite statutory requirements of the Second Chance Act. See, Kinyon Decl., supra at ¶6. The Respondent avers that the BOP anticipates it "will transfer [the Petitioner] to a halfway house some time in January 2010, which staff believe is a sufficient amount of time for the Petitioner," based upon the factors outlined in Title 18 U.S.C. §3621(b), and, specifically, the Petitioner's "good family support, specialized and

---

[2](...continued)
to say that his parents provided only $1,000.00. Nevertheless, in both contexts, he recognized that he had approximately $1,000.00 at his disposal, regardless of the source from which he acquired that sum.

general job skills, financial resources, life skills, and community resources." Id. The Respondent further attests that the Petitioner has completed numerous courses and maintained clear conduct * * * [and] he is only serving a 24-month sentence so his need for reintegration into society is much less than that of other inmates serving longer sentences." Id.

The Unit Team memorialized the factors it considered on a one-page preprinted form. Id. at Attachment B. Specifically, the Unit Team took note of numerous individual factors, including the nature and circumstances of the Petitioner's offense; that he was sentenced at the bottom of the Guidelines range; that the sentencing Court had not made any relevant statement; that he has a High School diploma; that his work performance at FPC-Duluth was above-average; that he had no disciplinary history at FPC-Duluth; and that he had partially completed the goals established in his reentry plan at the time of the assessment.[3] Id. In addition, as previously described, the Unit Team noted its consideration of the Petitioner's family support, financial resources, community resources, specialized and generalized job skills, life skills, and a promise

---

[3]The Unit Team's assessment also reflects that it considered his "FRP Participation," and indicates that this is complete. See, Kinyon Decl., supra at Attachment B; Petitioner's Reply, Docket No. 10, at p. 5. However, nothing in the Record explains to what "FRP Participation" refers.

of employment.  Id.  In determining the appropriate facility for the Petitioner, his Unit Team noted its consideration of numerous factors, including whether he would need resources related to employment, transportation, clothing assistance, obtaining a driver's license, a housing search, drug and alcohol aftercare, medical resources, education programs, or mental health aftercare.  Id.

Subsequently, on January 26, 2009, the Petitioner submitted to Havron and Coleman an Inmate Request to Staff, in which he asked for an individual assessment and plan for reentry, pursuant to Title 18 U.S.C. 4042, and in which he again stated his request for additional time in an RRC.  See, Petition, supra at p. 3 and Attachment 4.  At that time, the Petitioner amended his request from twelve (12) months to 220 days, so as to allow for his completion of a Construction Technology Program, that was offered by FPC-Duluth in conjunction with the Lake Superior College.  Id.  The Petitioner expressed his belief "that 60-90 days of Community Confinement is well below adequate * * * [and] I also request you provide me with an individual assessment along with the release requirements, within a timely manner which will allow me to maximize my community confinement time."  Id. at Attachment 4.

On February 3, 2009, Havron responded, as follows:

> Your request has been reviewed per the 2nd Chance Act and a 60-90 day RRC placement is appropriate.  It is

> unfortunate your wife has filed for divorce. However, as
> you indicated previously, you do have other family,
> community support and secured employment.

Id. at Attachment 5.

On February 6, 2009, the Petitioner submitted to Havron another Inmate Request to

Staff, in which he again requested an individual assessment and reentry plan. Id. at

p. 4 and Attachment 7. In that request, the Petitioner states, as follows:

> Specifically, I have asked, and am asking again, what is it
> that I can do, while at FPC Duluth, to maximize my
> community confinement time? I understand that I am to be
> provided with an individual assessment that will assist me
> in making progress towards a goal that provides for the
> opportunity to be considered for the maximum allowable
> community confinement.

> In that a plan has not been developed for me, I offer the
> following plan as an informal resolution to our differences
> as it relates to your current recommendation of 90-120 days
> of community confinement.

> My plan for employment is to attempt to go back to the last
> job that I held prior to reporting to FPC Duluth. I was a
> journeyman tile setter and project foreman. I will need
> 220-250 days of community confinement time to make my
> plan work. The current law calls for me to be provided
> with "sufficient duration to provide the greatest likelihood
> of a successful reintegration into the community." For a
> successful reintegration into the community, I will require
> sufficient time to secure work, save money for housing and
> a down payment for a vehicle and to put whatever is left of
> my family situation back together. Simple math would
> indicate "more" rather than "less" time will be necessary to

keep me from being a further burden on society and to experience sefl-sufficiency [sic].

As you will note from my inmate transcripts, I have fulfilled all of the BOP recommended programming and have maintained clear conduct while at FPC Duluth. By all accounts I am eligible to be considered for the maximum allowable community confinement time.

Id. at Attachment 7.

On February 10, 2009, Havron responded to the Petitioner's latest request, as follows:

This is repetitive. You have been reviewed per the 2nd Chance Act and a recommendation of 60-90 days RRC placement will be made. Enrolling in and completing programs is a part of the review process. You are doing everything asked of you by the Unit Team. A copy of the RPP list and our recommendations have been given to you along with your team review.

Id. at Attachment 8.

On March 4, 2009, the Petitioner submitted another Inmate Request to Staff, in which he asked for an explanation of what was required by his Unit Team's recommendation that he prepare an employment folder, and asking what he should expect his salary to be in his first six (6) months following release from incarceration. See, Supplement to Petition, supra at Attachment 1. Havron referred the Petitioner to a BOP staff person in the Education Department, who would be able to assist him in preparing his employment folder. Id. According to the Petitioner, Havron did not answer his question regarding his salary post-release. Id.

The Petitioner avers that he has enrolled in, and completed, every course that his Unit Team recommended, in addition to numerous other courses. See, <u>Petition</u>, supra at p.4 and Attachment 10. Moreover, the Petitioner attests that he has "a very small family and his parents are the only family he has * * * [and they] are approaching their 70's and are not [in the] * * * best of health." <u>Petitioner's Reply</u>, supra at p. 6. The Petitioner further avers that his parents rely on a fixed income, so they will be unable to provide him with financial support. <u>Id.</u> In addition, the Petitioner asserts that he plans to return to the Twin Cities metropolitan area upon release from incarceration "so as to best maximize employment opportunities. <u>Id.</u> at p. 6. He advises that his parents reside over two (2) hours distant from the metropolitan area. <u>Id.</u> Accordingly, the Petitioner contends that he will be unable to reside with his parents post-release. <u>Id.</u>

Turning to consider the current Petition, we note that it was filed on March 4, 2009, after the Petitioner had submitted several informal grievances at the institutional level only, and without having utilized any of his formal Administrative Remedies. On April 15, 2009, the Petitioner filed an Inmate Request to Staff with Havron, which states as follows:

> Sorry to bother you with this, but something came up during my Team Meeting today (4/15/09) I had a question

> about. We briefly and politely discussed my 2241 Petition
> at which time you asked if I had used the administrative
> remedy process and answered your own question by saying
> something like "that's right, you don't have to." This is the
> only part of our conversation that I'm not sure I understand
> completely.

Petitioner's Reply, supra at Attachment E.

Having not received a written response, on April 22, 2009, the Petitioner submitted

to Havron another Inmate Request to Staff, in which he again raised the issue

concerning his Administrative Remedies. Id. at Attachment F. In that request, the

Petitioner described a conversation with Havron, in which Havron purportedly stated

that the Petitioner did not have to pursue his Administrative Remedies on the ground

that the process could take as long as four (4) to five (5) months to complete. Id.

The Petitioner does not challenge the propriety of his conviction, or the

sentence imposed by the District Court. Instead, he challenges the BOP's denial of

his request for a 220 day RRC placement which, he claims, is necessary for his

successful reintegration into society following his incarceration. Specifically, the

Petitioner contends that the BOP failed to evaluate him on an individualized basis, and

that it categorically denied him additional time in an RRC. Accordingly, he requests

an Order from the Court requiring the BOP to place him in an RRC by no later than

August 10, 2009. See, Petition, supra at p. 8. In addition, the Petitioner further

contends that the BOP's individual assessment, and RRC review, were inaccurate and "purposefully fraudulent." Petitioner's Reply, supra at pp. 3-4.

In particular, the Petitioner contests the validity of the BOP's individual assessment, with respect to its reliance on family support, community support, financial support, and employment. See, Supplement to Petition, supra at pp. 1-2. First, he contends that, contrary to the BOP's assessment, he will have little family support upon release from incarceration because his elderly parents are in no position to provide support, given their poor health and fixed income. In addition, the Petitioner contends that he has no financial support, for essentially the same reasons that he has no family support. The Petitioner further argues that, even if community support is available, the BOP's consideration of those factors in his RRC review contravenes the purpose of the Second Chance Act, which is to provide for the self-sufficiency of former inmates.

Lastly, the Petitioner claims that the BOP erroneously relied on the promise of employment from his former employer, because no job is secure in light of the hard economic times. The Petitioner admits that he has not exhausted his administrative remedies but, he contends, that exhaustion should be excused because the BOP evaluated him only fourteen and one-half (14½) months prior to his projected release

date, rather than the seventeen to nineteen (17-19) months prior to release as provided by the BOP's own policy. See, <u>Petitioner's Reply</u>, supra at pp. 2-3. In addition, the Petitioner asserts that a BOP staff member represented to the Petitioner that he was not required to exhaust his administrative remedies for a challenge under the Second Chance Act. <u>Id.</u> at p. 3.

In response, the Respondent asks that we dismiss the Petition for four (4) reasons: 1) because the Petitioner failed to exhaust his administrative remedies; 2) because the Petitioner received an individualized RRC placement assessment as required by Title 18 U.S.C. §3624(c); 3) because the Petitioner has no statutory right to any particular length of time in an RRC, and the BOP has the discretion to determine that length; and 4) because the Petitioner does not have a right to be incarcerated in any particular place. See, <u>Government's Response to Petition</u>, <u>Docket No. 5</u>, at pp. 8-13. Following the parties' submissions, the Petitioner also moved for Judgment on the Pleadings, see Docket No. 11, in which he claimed that he was entitled to a Writ of Habeas Corpus because the Respondent's arguments lacked accurate factual support, "logical integrity," and because it shows the "blatant abuse and manipulation of discretion" by the Respondent.

We address the parties' arguments in turn.

III.  <u>Discussion</u>

A.  <u>Exhaustion of Administrative Remedies</u>.  By way of additional background, the BOP has a sequential Administrative Remedy Program (the "Program"), which is described in 28 C.F.R. §§542.10 <u>et</u> <u>seq.</u>  The Program requires that an inmate "first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue." <u>28 C.F.R. §542.13(a)</u>.  If the inmate is not satisfied with the informal resolution, then he can submit a written Administrative Remedy Request to the Warden of the facility, within "20 calendar days following the date on which the basis for the Request occurred." <u>28 C.F.R. §542.14(a)</u>.  "Once filed, response shall be made by the Warden * * * within 20 calendar days." <u>28 C.F.R. §542.18</u>.

"An inmate who is not satisfied with the Warden's response may submit an Appeal * * * to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." <u>28 C.F.R. §542.15(a)</u>.  The Regional Director's response is due thirty (30) calendar days thereafter.  See, <u>28 C.F.R. §542.18</u>.  "An inmate who is not satisfied with the Regional Director's response may submit an Appeal * * * to the General Counsel within 30 calendar days of the date the Regional Director signed the response." <u>28 C.F.R. §542.15(a)</u>.  The General Counsel's

response is due forty (40) calendar days thereafter. See, 28 C.F.R. §542.18. "Appeal to the General Counsel is the final administrative appeal." 28 C.F.R. §542.15(a). Therefore, in order to have exhausted his administrative remedies, an inmate must have followed the sequential process through to a final determination, by the General Counsel.

As noted, the Petitioner did not press the issues raised in his Petition beyond the informal grievances that he filed at the institutional level with his Unit Team. Accordingly, the Respondent asserts that the Petitioner has not exhausted his available administrative remedies, and asks that we dismiss the Petition on that ground. However, the Petitioner asks that we excuse the lack of exhaustion because the BOP did not evaluate him for an RRC placement until fourteen and one-half (14½) months prior to his release, which left him with insufficient time to pursue those remedies before the date of his requested transfer. See, Petitioner's Reply, supra at p. 3. In addition, the Petitioner asserts that his failure to exhaust his administrative remedies should be excused in light of a BOP staff member's representation, on more than one (1) occasion, that he was not required to exhaust those remedies for claims brought pursuant to the Second Chance Act. Id. at Attachments E and F. We also note that the Petitioner's tentative RRC transfer date is rapidly approaching.

It is well-established that inmates challenging the execution, or computation, of their sentences through a Writ of Habeas Corpus must first exhaust their available administrative remedies. See, Mathena v. United States, 577 F.3d 943, 946 (8th Cir. 2009) ("A prisoner may bring a habeas action challenging the BOP's execution of his sentence only if he first presents his claims to the BOP."); United States v. Tindall, 455 F.3d 885, 888 (8th Cir. 2006), cert. denied, 549 U.S. 1152 (2007); Willis v. Ciccone, 506 F.2d 1011, 1015 (8th Cir. 1974). However, the exhaustion requirement, in the context of a Section 2241 Habeas Petition, is a judicially created requirement, and is, therefore, not jurisdictional. See, Lueth v. Beach, 498 F.3d 795, 797 n. 3 (8th Cir. 2007), cert. denied, --- U.S. ---, 128 S.Ct. 927 (2008); Acevedo-Carranza v. Ashcroft, 371 F.3d 539, 541 n. 3 (9th Cir. 2004); Somerset v. Fondren, 2009 WL 3461410 at *2 (D. Minn., October 20, 2009).

Accordingly, Courts have the discretion to waive exhaustion, and to reach the merits of the Petition. See, Acevedo-Carranza v. Ashcroft, supra at 541. The Courts have waived exhaustion "where its imposition would prejudice the prisoner's subsequent court action because of the unreasonable timeframe involved in the administrative remedy." O'Hara v. Rios, 2009 WL 3164724 at *4 (D. Minn., September 28, 2009)(waiving exhaustion for a challenge to the length of an RRC

placement because the end of the petitioner's sentence was nearing, and any subsequent action would likely be moot as a result), citing Jones v. Zenk, 495 F. Supp.2d 1289, 1297 (N.D. Ga. 2007)(recognizing that a Court has discretion to waive exhaustion in its "sound judicial discretion"), quoting McCarthy v. Madigan, 503 U.S. 140, 144 (1992); see also, Fazzini v. Northeast Ohio Correctional Center, 473 F.3d 229, 236 (6th Cir. 2006)[citing cases]("We have recognized that the habeas exhaustion requirement is not without exception, as a prisoner's failure to exhaust available state or administrative remedies may be excused where pursuing such remedies would be futile or unable to afford the petitioner the relief he seeks.").

Here, the Petitioner's projected release date is April 2, 2010, and the BOP has advised that the Petitioner will likely be transferred to an RRC in January of 2010. It is already too late for the Petitioner to receive the full relief that he seeks and, moreover, we conclude that the Petitioner has adequately developed the factual record, in light of his numerous informal requests to BOP staff, such that we are able to

consider his claims on their merits.[4]  Accordingly, the Petitioner's failure to exhaust

his administrative remedies is excused, and we proceed to the merits of his Petition.

      B.     <u>The Substance of the Petitioner's Claim</u>.

          1.     <u>Standard of Review</u>.  "The writ of habeas corpus shall not extend

to a prisoner unless * * * [h]e is in custody in violation of the Constitution or law or

treaties of the United States."  <u>Title 28 U.S.C. §2241(c)(3)</u>.  Accordingly, Federal

Habeas provides a remedy only for prisoners challenging the fact or duration of their

custody, rather than the conditions of their confinement.  See, <u>Kruger v. Erickson</u>, 77

F.3d 1071, 1073 (8th Cir. 1996)("If the prisoner is not challenging the validity of his

conviction or the length of his detention * * * then a writ of habeas corpus is not the

proper remedy."); <u>Badea v. Cox</u>, 931 F.2d 573, 574 (9th Cir. 1991)("Habeas corpus

proceedings are the proper mechanism for a prisoner to challenge the 'legality or

duration' of confinement * * *[;] [a] civil rights action, in contrast, is the proper

method of challenging 'conditions of * * * confinement.'")[internal citation omitted];

---

[4]The Petitioner claims that the Respondent has attempted "to deceive the Court by claiming Tovey's RRC review took place as per BOP policy * * * 17-19 months prior to his projected release date," when it really it took place around fourteen (14) months prior to his release date.  See, <u>Petitioner's Reply</u>, supra at p. 4.  Given our Recommendation, that his failure to exhaust be excused, we need not address that aspect of the Petitioner's claims.

Campillo v. Sullivan, 853 F.2d 593, 595 (8th Cir. 1988), cert. denied, 490 U.S. 1082 (1989)("The writ of habeas corpus functions to grant relief from unlawful custody or imprisonment."); Archuleta v. Hedrick, 365 F.3d 644, 647 (8th Cir. 2004); Otey v. Hopkins, 5 F.3d 1125, 1130 (8th Cir. 1993), cert. denied, 512 U.S. 1246 (1994) (holding that the petitioner properly raised his claims in a Habeas Petition where the "dominant theme [in the Petition] is that his continuing detention at that facility is unlawful.").

Accordingly, "[t]he central focus of the writ of habeas corpus is to provide a remedy for prisoners who are challenging the fact or duration of their physical confinement and are seeking **immediate release or a speedier release.**" Otey v. Hopkins, supra at 1130 [emphasis added], citing Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).

        2.     <u>Legal Analysis</u>.  As an initial matter, we recognize that the Courts of this Circuit, and District, have consistently recognized that a prisoner may challenge his RRC placement under Section 2241.  See, Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004)(challenging BOP's policy of limiting an RRC placement to lesser of six (6) months or ten (10) percent of prisoner's sentence); Knish v. Stine, 347 F. Supp.2d 682 (D. Minn. 2004)(allowing challenge to BOP's policy limiting an RRC

placement to the last ten (10) percent of an inmate's sentence under Habeas Statute); Ragsdale v. Caraway, 2006 WL 44017 (D. Minn., January 26, 2006)(challenging through a Habeas Petition the BOP's policy related to an inmate's transfer to an RRC). Accordingly, we turn to the merits of the Petitioner's claims.

As noted, the Petitioner contends that he is entitled to a placement of two hundred and twenty (220) days in an RRC, and that the BOP failed to properly conduct an individualized assessment of his need for placement in an RRC. The Petitioner claims that the BOP abused its discretion in conducting its RRC review of his circumstances. In turn, the Respondent argues that the Petitioner has no legally enforceable right to a 220-day placement in an RRC and, in any event, that the BOP properly conducted an individualized assessment of the Petitioner, in light of the governing statutory requirements. We conclude that the Petitioner has not raised a claim that would entitle him to Habeas relief, as he has failed to show that the BOP violated the law in conducting its RRC review of the Petitioner's circumstances, or in determining that a sixty to ninety (60-90) day placement would be a sufficient length of time to satisfy the Petitioner's needs.

Of course, the BOP's authority to designate the location of an inmate's imprisonment is governed by Title 18 U.S.C. §3621(b), which enumerates five (5)

factors that the BOP, at a minimum, must consider in determining where to designate

an inmate, and which reads as follows:

> (b)    Place of imprisonment. -- The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering --
>
> > (1)    the resources of the facility contemplated;
> >
> > (2)    the nature and circumstances of the offense;
> >
> > (3)    the history and characteristics of the prisoner;
> >
> > (4)    any statement by the court that imposed the sentence --
> >
> > > (A)    concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> > >
> > > (B)    recommending a type of penal or correctional facility as appropriate; and
> >
> > (5)    any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse. Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person.

Title 18 U.S.C. §3621(b).

Our Court of Appeals has explained that Title 18 U.S.C. §3621(b) affords the BOP "'broad discretion to choose the location of an inmate's imprisonment,' so long as the factors enumerated in the statute are considered." Fegans v. United States, 506 F.3d 1101, 1103 (8th Cir. 2007), quoting Fults v. Sanders, 442 F.3d 1088, 1090 (8th Cir. 2006).

Title 18 U.S.C. §3624(c) governs the BOP's authority to designate inmates who are nearing the end of their term of imprisonment to RRCs. Under that provision, the BOP has a duty to make efforts to designate inmates to RRCs during the final months of their incarceration, so as to prepare for reentry into the community.

Notwithstanding the BOP's duty to consider inmates for RRC placement under Section 3624(c), our Court of Appeals has held that an RRC is considered a place of confinement for purposes of Section 3621(b), and the BOP may, in its discretion, transfer an inmate to an RRC anytime during an inmate's incarceration. See, <u>Miller v. Whitehead</u>, 527 F.3d 752, 755 n. 3 (8th Cir. 2008); see also, <u>Fults v. Sanders</u>, supra at 1090-1091; <u>Elwood v. Jeter</u>, supra.

The Second Chance Act of 2007, Pub. Law No. 110-199, 122 Stat. 657( the "Second Chance Act"), was signed into law on April 9, 2008. Among its many provisions, the Second Chance Act modified the BOP's authority, pursuant to Title 18 U.S.C. §3624(c), to designate prisoners who are nearing the end of their term of imprisonment to RRCs. The purpose of the Statute, as pertinent here, is as follows:

> (5)  to assist offenders reentering the community from incarceration to establish a self-sustaining and law-abiding life by providing sufficient transitional services for as short of a period as practicable, not to exceed one year, unless a longer period is specifically determined to be necessary by a medical or other appropriate treatment professional; and

> (6)  to provide offenders in prisons, jails or juvenile facilities with educational, literacy, vocational, and job placement services to facilitate re-entry into the community.

Public Law No. 110-199, §3, 122 Stat. 657, 658.

As amended, Section 3624(c)(1) provides as follows:

> The Director of the Bureau of Prisons **shall, to the extent practicable,** ensure that a prisoner serving a term of imprisonment **spends a portion of the final months of that term (not to exceed 12 months),** under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

[Emphasis added].[5]

In accordance with the Second Chance Act, which increased the permitted RRC designation under Section 3624(c), from six (6) months to twelve (12) months, it is BOP policy to evaluate inmates for RRC placement approximately seventeen to

---

[5]Prior to amendment, Title 18 U.S.C. §3624(c) provided as follows:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part**, not to exceed six months, of the last 10 per centum of the term** to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

nineteen (17-19) months in advance of their projected release date.  See, <u>Kinyon Decl.</u>, supra at ¶3.

In connection with those amendments, the Second Chance Act directed the BOP to issue new Regulations, which were to be designed to ensure that RRC placements, under Section 3624(c), are "(A) conducted in a manner consistent with Section 3621(b) of this title; (B) determined on an individual basis; and (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community." <u>Title 18 U.S.C. §3624(c)(6)</u>.  On October 21, 2008, Interim Regulations were published in the Federal Register.  See, <u>28 C.F.R. Part 570, 73 F.R. 62440-01</u> (Interim Rule with request for comments).  Paralleling the language of the Second Chance Act, the Regulations provide that "[i]nmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community."  <u>28 C.F.R. §570.22</u>.

"Read together, §3621(b) and §3624(c) vest the BOP with broad discretion in considering RRC placement, and nothing in the statutes, or any applicable case law, mandates that the BOP designate an inmate for RRC placement at any time, much less for the maximum twelve-month period provided by the Second Chance Act."

Fleishchli v. Outlaw, 2009 WL 3572663 at *4 (E.D. Ark., October 26, 2009), citing

Elwood v. Jeter, supra at 847 (noting that Section 3624(c) "does not require placement

in an RRC," as "[i]t only obligates the BOP to facilitate the prisoner's transition from

the prison system."); see also, Raymer v. Cruz, 2009 WL 2778073 at *1 (D. Minn.,

August 28, 2009)(The petitioner "is not entitled to any particular period of halfway

house or home confinement period under the Second Chance Act."); Bonner v.

Federal Bureau of Prisons, 2008 WL 2704192 at *2 (D. Minn., June 9, 2008)(Section

3624(c) does not set a minimum amount of time that the prisoner must spend in an

RRC); Lillie v. Cruz, 2009 WL 2998176 at *3 (D. Minn., September 15, 2009)(noting

that Section 3624(c) does not guarantee that a prisoner will be placed in an RRC at

all); Segovia-Reyna v. Cruz, 2009 WL 279482 at *2 (D. Minn., February 4, 2009); see

also, Gomez-Gonzalez v. United States, 2007 WL 3224636 at *1 (D. Minn., October

29, 2007)(recognizing that "inmates have no right to incarceration in a particular

institution."), citing Olim v. Wakinekona, 461 U.S. 238, 249 (1983).[6]

_____

[6]To the extent that the Petitioner contends that the BOP's policy of reserving RRC
placements exceeding six (6) months for extraordinary circumstances is contrary to
the law, we find the argument to be entirely without merit. Our Court of Appeals
recently concluded that a BOP Program Statement, which required an "extraordinary
justification" for RRC placements longer than six (6) months, did not conflict with the
BOP's exercise of discretion, and did not create a categorical exclusion of placements
(continued...)

Instead, the BOP has a duty to consider an RRC placement, for inmates nearing the end of their incarceration, so as to provide for the greatest likelihood of successful reintegration, on an individual basis, and taking into consideration the five (5) factors listed in Section 3621. See, <u>Stanko v. Rios</u>, 2009 WL 1303969 at *2-3 (D. Minn., May 8, 2009); <u>Lillie v. Cruz</u>, supra at *3; <u>O'Hara v. Rios</u>, supra at *5 (D. Minn., September 28, 2009) As a consequence, to the extent the Petitioner requests an Order requiring the BOP to place him in an RRC immediately, that portion of his Petition is entirely without merit, as he has no legal right to any particular length of time in an RRC, which we could now enforce.[7]

_____

[6](...continued)
greater than six (6) months. See, <u>Miller v. Whitehead</u>, 527 F.3d 752, 757 n.4 (8th Cir. 2008); see also, <u>Stanko v. Rios</u>, 2009 WL 1303969 at *5 (D. Minn., May 8, 2009); <u>Fleischli v. Outlaw</u>, 2009 WL 3572663 at *5 (E.D. Ark., October 26, 2009). Accordingly, the Court of Appeals concluded that the BOP's policy did not conflict with Section 3621(b), or the provisions of the Second Chance Act. <u>Id.</u> Guided by that case law, we conclude that the BOP has not violated the provisions of the Second Chance Act, or committed any other legal error, in requiring that an RRC placement of greater than six (6) months be supported by an extraordinary justification. Likewise, the Petitioner's assertion, that the BOP must start at twelve (12) months and work down, is without basis. Simply put, the BOP's RRC review is not a simple application of plus and minus factors, as the BOP's RRC review is a discretionary determination that need not be quantified in an equation. Accordingly, we reject those aspects of the Petitioner's argument.

[7]Given that the Petitioner's initial request for a 220-day placement would have
(continued...)

- 28 -

Under the circumstances presented here, we are convinced that the BOP properly considered the Petitioner's RRC placement on an individualized basis, with appropriate consideration given to the requisite statutory factors. As previously outlined, the BOP considered the Petitioner's individual circumstances, including that he had both generalized and specialized job skills, that he had a promise of employment, and that he would have family, community, and financial support, that would aid him in his reentry. Moreover, the BOP considered the resources at the available facilities from which the Petitioner could benefit, the nature of his crime, and the absence of any pertinent sentencing policy, or statement by the Sentencing Court, that impacted upon their assessment.

With respect to the BOP's decision that sixty to ninety (60 to 90) days would be sufficient, the BOP made that determination in light of those characteristics and circumstances we have already identified as being appropriate. The Respondent avers that the BOP has concluded that this assessment is adequate to satisfy the Petitioner's needs, and to facilitate his reentry into the community following incarceration. An inmate's belief that he should be afforded more time in an RRC, in order to establish

---

[7](...continued)
required the BOP to transfer him to an RRC in August of 2009, we have characterized his request as a request for an immediate transfer to an RRC.

a self-sustaining life, and to facilitate reentry into the community, neither surprises us, nor does it invalidate the BOP's decision to the contrary. Compare, Lillie v. Cruz, supra at *3-4 (rejecting a petitioner's claim that he was entitled to more time in an RRC because he needed time to adjust to a new career, and because of his exemplary behavior in prison); Fisher v. Cruz, 2008 WL 2903334 at *2-3 (D. Minn., July 24, 2008)(rejecting a claim that the petitioner was entitled to a longer RRC placement because other inmates with shorter sentences received longer placements); Esters v. Jett, 2009 WL 3417900 at *4 (D. Minn., October 21, 2009)(rejecting claim that petitioner was entitled to longer period based upon his desire to complete drug treatment program, and because he would have no home to return to); Segovia-Reyna, supra at *2 (concluding that Habeas relief was not warranted where the Petitioner believed that the BOP misjudged his needs but where no legal error was made in the decision-making process).

We recognize that the Petitioner has challenged numerous aspects of the BOP's review as factually inaccurate, or factually unsupportable, specifically with respect to its determination that he has community support, family support, financial support,

and a promise of employment.[8]  However, we disagree with the Petitioner's argument

on this point.  We find that the Petitioner has merely shown that he disagrees with the

BOP's assessment, and we find nothing in the evidence proffered by the Petitioner

that would suggest the BOP's reliance on those factors was baseless, an abuse of

discretion, or otherwise improper.  In our considered view, the BOP properly

supported its recommendation with reasons that are neither irrational nor arbitrary.

The Record reflects that the Petitioner has received approximately $1,000.00

in his trust account at FPC-Duluth, which substantiates that he has some source of

financial support; he has maintained contact with his parents, who may be able to

provide some support, even if it is not the amount of support that the Petitioner might

desire; he was offered employment by his former employer, albeit not as secure as the

---

[8]The Petitioner also suggests that the BOP erred in failing to provide reentry
planning for him.  However, the Record reflects that the BOP did provide guidance,
and planning, for the Petitioner.  See, Petition, supra at Attachment 1 (the Petitioner's
"Release Preparation Program Plan/Checklist"); Id. at Attachment 9 ("Program
Review Report," and setting short-term and long-term goals).  The Petitioner appears
to believe that the BOP is required to develop a detailed plan for him, prior to his
reentry.  See, Supplement to Petition, at Attachments 1 and 3.  However, we find no
support for the type of detailed plan that the Petitioner appears to request, and we
conclude that any burden which the BOP may have, in preparing the Petitioner for
reentry, was appropriately satisfied, as reflected in the Petitioner's own submissions.

Petitioner might prefer;[9] and that the community to which he will return has various community resources that will also assist him in his reentry. The fact that the BOP did not alter its recommendation, based upon the Petitioner's arguments, does not render the BOP's assessment contrary to the law. The extent to which an inmate may have resources at his disposal -- as but one example -- is a determination that is best left to the discretion of the BOP.

Notwithstanding the Petitioner's assertions to the contrary, we find no evidence that the BOP improperly considered the Petitioner's circumstances in bad faith, or abused its discretion in its determination. The Record merely reflects that the Petitioner disagreed with the BOP's assessment, and that he was, and is, unhappy that they did not provide for more time in light of the issues he has raised. The Petitioner

---

[9]Again, the Petitioner has not explained why the BOP may only consider employment that is guaranteed, or contractual, and he has not even asserted that the employer has rescinded the prior offer, but only suggests that prospects may not be as good as once thought. Moreover, the Petitioner has not even asserted that the BOP was aware of his conversations with his employer, when they made his assessment. Having made their assessment, the BOP need not reevaluate its decision whenever the Petitioner's circumstances might change. Compare, <u>Miller v. Whitehead</u>, 527 F.3d 752, 757 (8th Cir. 2008) , quoting <u>Muniz v. Sabol</u>, 517 F.3d 29, 36 N.14 (1st Cir. 2008), --- U.S. ---, 129 S.Ct. 115 (2008)("[T]he argument advanced by the inmates would require the BOP to consider daily requests for transfer to an RRC from every inmate in a facility, and to deny such requests only after an individualized consideration of each inmate's request and the five statutory factors," and "'Congress surely did not intend such a result.'").

has not explained why the BOP was legally obligated to change its assessment in light of his concerns. Moreover, the Petitioner does not draw to our attention any legal authority which posits that the discretion of the BOP, insofar as RRC placements is concerned, is strictly limited, or subject to micromanaging by the Federal Courts, when Congress vested such discretion in the BOP in the first instance. Accordingly, we conclude that the BOP did not abuse its discretion.

Moreover, the Petitioner's argument, that the BOP improperly considered resources that are not entirely self-sufficient, in contravention of the purpose behind the Second Chance Act, is also without merit. See, Petition, supra at pp. 5-6. We find nothing in the Second Chance Act, or any other authority, that requires the BOP, in conducting its RRC review of an inmate, to consider only those factors that would allow the former inmate to be immediately, and entirely self-sufficient. Indeed, the Second Chance Act states that its purpose is, in part, "to assist offenders reentering the community from incarceration **to establish a self-sustaining and law-abiding life by providing sufficient transitional services** for as short of a period as practicable." PL 110-199,§3(a)(5), 122 Stat. 657, 658. The underlying premise of the Second Chance Act is that an inmate will need support from transitional services when reintegrating into society. We find nothing to support the contention that such a reintegration

excludes consideration of any support from the community, or an inmate's family. Compare, <u>O'Hara v. Rios</u>, supra at *6 (noting the BOP's consideration of community resources that would be available to the inmate upon release); <u>Fleischli v. Outlaw</u>, 2009 WL 3572663 at *5 (E.D. Ark., October 26, 2009) (recognizing that the BOP's assessment considered that the Petitioner would have family support).

We conclude that the BOP properly exercised its discretion in conducting its individual assessment of the Petitioner, as required by Section 3624(c), and Section 3621(b). Accordingly, there is no other remedy that the Court is empowered to provide. See, <u>Washington v. Copenhaver</u>, 2009 WL 1814460 at *4 (N.D. Cal., June 24, 2009)("Although petitioner may not obtain as much time in an RRC as she might desire, she has already received the only relief a court properly could order, specifically, an individualized determination in compliance with 18 U.S.C. § 3621(b) and 18 U.S.C. § 3624(c)."); <u>Rodriguez v. Smith</u>, 2007 WL 628663 at *8 (E.D. Cal., February 28, 2007), R&R adopted, 2007 WL 1101474 (April 12, 2007), aff'd, 541 F.3d 1180 (9th Cir. 2008)("To the extent that Petitioner requests an immediate transfer to an RRC his request should be denied," as "[t]he remedy in this case is not an

immediate transfer; rather, Petitioner's remedy is a proper exercise of discretion by Respondent.").[10]

Lastly, we emphasize that the BOP is uniquely qualified, in the first instance, to make decisions as to the propriety, as well as the length, of any community confinement for inmates nearing the end of their sentences. Cf., Hosna v. Groose, 80 F.3d 298, 303 (8th Cir. 1996), cert. denied, 519 U.S. 860 (1996)("[F]ederal courts ought to afford appropriate deference and flexibility to [prison] officials trying to manage a volatile [prison] environment," and "such flexibility is especially warranted in the fine tuning of the ordinary incidents of prison life," in order that the Courts do not "micro manage" prisons.), quoting Sandin v. Conner, 515 U.S. 472, 482-83 (1995); see also, O'Hara v. Rios, 2009 WL 3164724 at *7(D. Minn., September 28, 2009). On this Record, we find no legal justification for intruding upon the discretion of the BOP, with respect to the Petitioner's RRC placement and review. As such, we

---

[10]Moreover, we find no merit to the Petitioner's request that we order the BOP to provide a detailed explanation of its assessment. While the BOP's explanation may not have been as detailed as the Petitioner might wish, we find that the assessment was sufficient, and was based upon the appropriate statutory factors, as we have detailed. See, Fleischli v. Outlaw, 2009 WL 3572663 at *5 (E.D. Ark., October 26, 2009)("While the BOP's decision was brief, this record is sufficient to demonstrate that the BOP based Petitioner's RRC recommendation on legitimate factors individual to his situation, considering factors weighing both for and against extended RRC placement.").

- 35 -

leave the ultimate determination, as to the proper length of the Petitioner's RRC placement, to the well-vested discretion of the BOP, where Congress concluded it properly belongs.

In sum, we conclude that, while the Petitioner disagrees with the BOP's determination of his RRC needs, he has not established any competent evidence that the BOP abused its discretion. The BOP assessed his individual needs, as required by law, and determined that sixty to ninety (60 to 90) days was of sufficient duration to provide for his successful reintegration. Accordingly, we recommend that the Petitioner's request for Habeas relief be denied, and that the Petition be dismissed with prejudice, and that the Petitioner's Motion for Judgment on the Pleadings be denied.[11]

---

[11]We understand, and fully appreciate, the Petitioner's legitimate requests for the most expeditious consideration of his Petition. See, e.g., Docket Nos. 12 and 13. While we have proceeded with all due dispatch, the Petitioner should recognize that, given the existence of the Second Chance Act, other prisoners -- many other prisoners -- have joined with him in asking for a de novo review of the BOP's RRC decision, for no other reason than that the petitioner believes that the BOP's assessment was insufficient, or did not get it right. While it is the right of every petitioner to seek Habeas relief, when so many seek relief on a basis that the Courts of this Circuit, and of every other Circuit, have consistently rejected as contrary to the discretion that Congress entrusted to the BOP, the capacity of the Courts to address, on an individualized basis, as we have done here, each of those Petitioners is necessarily impacted particularly in view of the other burdens on the Courts' resources. In this
(continued...)

NOW, THEREFORE, It is --

RECOMMENDED:

1.     That the Petition for Writ of Habeas Corpus [Docket No. 1] be denied, and that the Petition be dismissed with prejudice.

2.     That the Petitioner's Motion for Judgment on the Pleadings [Docket No.11] be denied.

Dated: December 23, 2009                    *s/Raymond L. Erickson*
                                             Raymond L. Erickson
                                             CHIEF U.S. MAGISTRATE JUDGE


## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than January 6, 2010,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply

---

[11](...continued)
instance, as in so many others, no legal error undermines the BOP's decision, and accordingly, under the governing law, the Petition, here, should be dismissed with prejudice.

with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than January 6, 2010,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.